# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8277 | **DATE** | 10/2/2002 |
| **CASE TITLE** | Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan vs. Varco, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Wal-Mart's motion for summary judgment is granted [#12] in the form of restitution in the amount of $18,865.72 less Wal-Mart's proportionate share of Dunford's fee and Varco's costs, plus prejudgment interest. Counts III and IV of Wal-Mart's complaint are voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a)(2). Court dismisses Dunford as a defendant and Dunford's counterclaim against Wal-Mart under Fed. R. Civ. P 21. Wal-Mart's motion to dismiss the counterclaim [#52-1] and Dunford's motion for summary judgment on his counterclaim [#47-1] are moot. The parties are directed to submit a proposed decree, consistent with this opinion, requiring restitution of a precise amount of money. Status is set for 10/29/02 at 9:30 a.m. at which time the parties shall appear should they be unable to agree on an appropriate form of order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 03 2002 date docketed | 83 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | G.Y. docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 10/2/2002 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADMINISTRATIVE COMMITTEE OF THE WAL-MART STORES, INC. ASSOCIATES' HEALTH AND WELFARE PLAN,<br><br>Plaintiff and Counterdefendant,<br><br>vs.<br><br>CLARA VARCO,<br><br>Defendant,<br><br>and<br><br>LAURENCE DUNFORD,<br><br>Defendant and Counterplaintiff. | **DOCKETED**<br>OCT 0 3 2002<br><br>Case No. 01 C 8277<br>Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

Plaintiff and counterdefendant, Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan ("Wal-Mart"), is a fiduciary and administrator of an employee welfare benefit plan (the "Plan") under the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Defendant, Clara Varco ("Varco"), is a participant in the Plan and a party in possession of monies attributable to medical expenses advanced by Wal-Mart under the Plan which were derived from a third party recovery in a state court action. In this case, Wal-Mart seeks restitution in an amount equal to the reimbursement to which it is entitled under the Plan for payment of Varco's medical expenses. Defendant and counterplaintiff, Laurence J. Dunford ("Dunford"), an attorney who was retained by Varco, seeks

1

in his counterclaim a judgment against Wal-Mart for a portion of his professional fee out of the same monies in Varco's possession from which Wal-Mart seeks reimbursement. For the reasons set forth herein, the court grants Wal-Mart's motion but finds that under the common fund doctrine Wal-Mart must pay its proportional share of Dunford's attorney's fee. Thus, judgment in favor of Wal-Mart shall be reduced from the amount requested.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

2

## FACTS AND PROCEDURAL HISTORY

Although the facts and the procedural history are well-known among the court and the parties, the court reiterates from its earlier memorandum opinion and order as follows:

> Varco at all relevant times was a participant in a health and welfare plan (the "Plan") provided by her employer and administered by Wal-Mart.[1] The Plan provides that it has a right to "recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf and/or your dependents to the extent of . . . [a]ny judgment, settlement or any payment made or to be made, relating to the accident, including but not limited to other insurance." The Plan further provides that it "does not pay for nor is responsible for the participant's attorney's fees. Attorney's fees are to be paid solely by the participant."[2] After an automobile accident with Kristopher Lapsis ("Lapsis") during September, 2000, Wal-Mart paid medical benefits on behalf of Varco in the amount of $34,034.55. Varco filed a tort action in the Circuit Court of Cook County, Illinois, against Lapsis, and in October, 2001, in contemplation of settlement, Varco by and through her counsel, Dunford, sought adjudication of various liens, including that of Wal-Mart. Wal-Mart asked the state court to postpone adjudication of its lien and on October 4, 2001, removed the state court case to this court. The Honorable James A. Alesia, relying on *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997), and *Speciale v. Seybold*, 147 F.3d 612 (7th Cir. 1998), held the case improperly removed and remanded it to the state court. *Varco v. Lapsis*, 172 F. Supp. 2d 985, 986-87 (N.D. Ill. 2001). On October 29, Wal-Mart filed this action. In early December, 2001, Dunford disbursed the settlement funds, while still subject to plaintiff's lien, to Varco and himself. Shortly thereafter, plaintiff sought emergency relief in this court to restrain defendants from further disposition of the funds until plaintiff's claim could be resolved. On December 14 and 21, 2001, this court granted plaintiff's motions for a temporary restraining order ("TRO") and preliminary injunction, respectively, because this court found that it had subject matter jurisdiction under *Administrative Committee v. Gauf*, 188 F.3d 767, 770 (7th Cir. 1999), and that plaintiff had a likelihood of success on the merits of a claim to impose a constructive trust[3] where plaintiff's counsel had

---

[1] Further background may be found in *Varco v. Lapsis*, 172 F. Supp. 2d 985, 987-88 (N.D. Ill. 2001).

[2] Varco concedes that she received the Plan's Associates Benefits Book, which includes these provisions. (Varco Aff. ¶ 2.) However, Varco attests that "she did not receive the plan and trust documents which created the duties and obligations of the parties[.]" (*Id.* ¶ 3.) Neither Varco nor her counsel attests that they made a discovery request for the documents.

[3] The court relied on *Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan v. Wells*, 213 F.3d 398, 403-04 (7th Cir. 2000).

3

disbursed the funds without an adjudication by *any* court of Wal-Mart's claim to share in the fund. On or about December 29, Dunford and Varco returned to state court with a motion to adjudicate Wal-Mart's lien. In response, plaintiff filed . . . an emergency motion pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283, the All Writs Act, 28 U.S.C. § 1651, and "the *Princess Lida* doctrine"[4] to enjoin the state court from adjudicating plaintiff's right to reimbursement subject to the lien.

On January 3, 2002, this court requested that Dunford ask the state court to continue the motion to adjudicate the lien to permit this court to consider plaintiff's emergency motion. On January 4, 2002, the state court continued the matter to January 11, noting its own jurisdiction over the remanded *Lapsis* case and specifically over Varco's petition to adjudicate the right of Wal-Mart to reimbursement. On January 10, 2002, this court entered an order to stay the state court proceedings and to enjoin defendants from further proceeding in state court.

*Administrative Committee* v. *Varco & Dunford*, No. 01 C 8277, 2002 WL 47159, at *1-3 (N.D. Ill. Jan. 14, 2002).

After this court stayed the state court proceedings and enjoined Dunford and Varco from proceeding in state court, on January 24, 2002, Wal-Mart removed for the second time Varco's personal injury action, *Varco* v. *Lapsis*, No. 02 C 0566, as the only remaining issue in that case was Varco's petition to adjudicate the lien of Wal-Mart, inasmuch as the state court, on Varco's motion, had dismissed all claims against all defendants, and no other liens were outstanding. On February 14, 2002, the removed case was reassigned to this court on grounds of relatedness. It is further noted that although the court was originally informed that the disputed monies could be traced to Dunford and Varco, Dunford has stated in open court that Varco holds all the disputed funds in a bank account. Moreover, because Blue Cross Blue Shield of Illinois, the Plan's third party administrator, was able to obtain discounts on Varco's medical expenses, the court on March 21, 2002, granted Varco's motion to amend the preliminary injunction by reducing the

---

[4]*Princess Lida of Thurn and Taxis* v. *Thompson*, 305 U.S. 456, 466-67 (1939).

4

amount subject to it to $18,865.72.[5]

## DISCUSSION

Wal-Mart seeks to enforce the reimbursement terms of the Plan pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).[6] (Pl. Mem. at 3.)[7] In response, Varco raises several

---

[5] When Dunford disbursed the settlement funds, Wal-Mart amended its original complaint to include Dunford as a defendant in its ERISA claim and also alleged state law claims of tortious inference with contractual relations and conversion. Dunford filed a counterclaim for attorney's fees. Subsequently, Dunford filed a motion for summary judgment on Wal-Mart's state law claims and his counterclaim.

Wal-Mart filed a motion to dismiss the counterclaim, arguing that ERISA preempts the common fund doctrine where the Plan's terms state that the attorney's fees are the responsibility of the participant and not the Plan and, alternatively, if ERISA does not preempt the common fund doctrine, then it has no application because Varco's recovery enabled her to pay Dunford and reimburse the Plan. Wal-Mart raised the same arguments in its response to Dunford's motion for summary judgment on his counterclaim. Because Dunford has already indicated that he received his full portion of attorney's fees from the settlement fund when he disbursed the monies and the disputed monies are in Varco's possession, Dunford has no claim against Wal-Mart.

Moreover, in response to Dunford's motion for summary judgment on the state law claims, Wal-Mart stated in its response brief that it would not object to the dismissal of its state law claims against Dunford now that the disputed monies are held by Varco. As such, the court construes Wal-Mart's brief in response as a motion for voluntary dismissal under Rule 41(a)(2), Fed. R. Civ. P., and dismisses the state law claims against Dunford.

As noted above, the disputed monies are in Varco's possession and not Dunford's and, thus, Wal-Mart no longer has an action against Dunford. As such, the court will dismiss Dunford as a defendant subject to Federal Rule of Civil Procedure 21 ("[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just"). Because Dunford has been paid, his counterclaim against Wal-Mart will be dismissed. As a consequence, Wal-Mart's motion to dismiss the counterclaim and Dunford's motion for summary judgment on his counterclaim are moot.

[6] The civil enforcement section of ERISA provides, in relevant part,

(a) Persons empowered to bring a civil action
A civil action may be brought–
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter of the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3).

[7] Wal-Mart also seeks the same amount according to an equitable lien and restitution. (Pl. Mem. at 3.) However, on January 14, 2002, the court dismissed all of Wal-Mart's claims for equitable relief with the exception of its "claim for the imposition of constructive trust on particular property in the hands of the defendants and for the pendent state law claims." *Administrative Committee*, 2002 WL 47159, at *4.

grounds for why summary judgment should be denied, namely, (1) the court lacks jurisdiction to hear the instant case; (2) the Plan's provisions do not impose a contractual duty on Varco; (3) the Plan's provisions do not bar recovery of attorney's fees from the Plan; and (4) federal courts apply the common fund doctrine to ERISA actions.

## A.     The court's jurisdiction to hear ERISA claims

Varco resurrects her argument from her motion to dismiss that the court lacks subject matter jurisdiction to hear the instant case. Specifically, Varco asserts that the court's imposition of the constructive trust subject to its preliminary injunction is not "other appropriate equitable relief" under § 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B), but is rather merely a legal claim. Varco relies on *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708 (2002) and *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir. 2002). The Court in *Great-West Life* held that section 502(a)(3), which authorizes a fiduciary to bring an action for appropriate equitable relief, did not authorize a suit by an ERISA plan against a beneficiary for reimbursement where the settlement funds (derived from the personal injury suit) had already been distributed to a special needs trust for the beneficiary's care and to the beneficiary's attorney in the state court action and lien holders (including a small portion to the ERISA plan), on the basis that the relief sought was legal relief. 534 U.S. at ___, 122 S. Ct. at 714-17. This court considered *Great West Life* in its January 14, 2002 opinion and found it distinguishable. It will not revisit it here.

*Bauhaus* was decided May 21, 2002 and, thus, not previously considered by this court. In *Bauhaus*, the court affirmed the lower court's dismissal of an ERISA plan administrator's

6

declaratory judgment action to enforce the terms of an employee benefit plan in order to obtain a portion of the participant's settlement funds in a tort suit. Treating the case as "indistinguishable in principle" from *Great-West Life*, the court affirmed the district court's dismissal. Significantly for our purposes here, the court compared the *Great West Life* facts, where the funds were in possession of a private special needs trust, to the *Bauhaus* facts, where the funds were in the registry of the court, and reasoned that the claim was still for legal rather than equitable relief because the defendants, participants and beneficiaries of the ERISA plan, "like the Knudsons in *Great-West*, are not in possession of the disputed funds, a fact that Justice Scalia found extremely important in *Great-West*." 292 F.3d at 445.

In this court's prior decision on Varco's motion to dismiss, it stated that the facts in the instant case were distinguishable from *Great-West Life*. *Administrative Committee*, 2002 WL 47159, at *3. Specifically, this court determined that it had subject matter jurisdiction because Wal-Mart claimed it was rightfully entitled to a portion of the disbursed settlement funds and had sued Varco (and Dunford at the time), who were in possession of the funds, for restitution. Thus, the court assumed control of the monies by imposing a constructive trust over the funds. *Id.* For the same reasons, the instant case is also distinguishable from *Bauhaus*. *See Great-West Life & Annuity Ins. Co. v. Brown*, 192 F. Supp.2d 1376, 1381 (N.D. Ga. 2002) ("Here, Defendant has placed the amount in controversy, which came directly from the settlement, in a non-interest bearing trust account. Therefore, the funds are identified and clearly traceable to the award from third parties. Accordingly, Plaintiff may seek restitution in equity"); *IBEW-NECA Southwestern Health and Benefit Fund v. Douthitt*, 211 F. Supp. 2d 812, 816 (N.D. Tx. 2002) (distinguishing *Great-West Life* and *Bauhaus* because the plaintiffs "do not seek to impose personal liability on

7

Defendant. Instead, Plaintiffs seek a constructive trust over particular funds, separate and apart from Defendant's personal resources, and only to the extent of the benefits it provided"). Varco does not address this distinction that the monies Wal-Mart seeks from her are within her sole possession. For these reasons, the court adheres to its view that it has subject matter jurisdiction.[8]

**B.      Varco's contractual duty under the Plan**

Varco next argues that the provisions set forth in the Associates Benefits Book do not impose a contractual duty on her. Varco points to a provision in the Associates Benefits Book, which provides:

> This booklet explains the principal provisions of each of Wal-Mart's benefit programs in simple language. However, if there is a disagreement between this booklet and the legal documents (plan text, trust agreements or insurance contract), which define the benefits of these plans, the legal documents will always govern.

(Varco Aff. Ex. A.) Varco asserts that because the Associates Benefits Book includes the statement "the legal documents will always govern" and she has not been provided these legal documents, a genuine issue of material fact exists as to her contractual duty under the Plan. In response, Wal-Mart provides a "Wrap Document," which incorporates the Associates Benefits Book. Wal-Mart contends that the Wrap Document and the Associates Benefits Book constitute "the Plan."

Varco's argument is frivolous on its face, lacking in reason or authority. *See Health Cost*

---

[8]Varco also makes the argument that Wal-Mart does not have a superior moral or equitable claim to the funds. This seems to be an argument that pertains to who is the "true owner" of the *res* once a constructive trust has been imposed. As it does not seem pertinent to jurisdiction, the court disregards this portion of Varco's argument.

8

*Controls of Illinois* v. *Washington*, 187 F.3d 703, 710 (7th Cir. 1999) ("When ... the plan and the summary plan description conflict, the former governs, being more complete–the original, as it were, which the summary plan description excerpts and translates into language that may be imprecise because it is designed to be intelligible to lay persons–unless the plan participant or beneficiary has reasonably relied on the summary plan description to his detriment"). Moreover, Varco points to no discovery request for the documents she does not have or any disagreement between the Associates Benefits Book and the full Plan documents concerning Varco's contractual duty under the Plan and Wal-Mart's right to reimbursement. Therefore, no genuine issue of material fact exists that the Plan imposes a duty on Varco to reimburse Wal-Mart for the medical payments advanced on her behalf.

C.  **The Plan's provisions on attorney's fees**

Varco further contends that the language relied on by Wal-Mart for full reimbursement does not bar recovery of her attorney's fee from the Plan. Essentially, she recasts the issue as one of who will pay Wal-Mart's share of Dunford's fee and argues that the Plan does not address it. Specifically, Varco points to the various provisions in the Plan, which state:

> The Plan has the right to ... recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf ... to the extent of any of the following payments: ...
> 
> • Attorneys fees
> 
> * * *
> 
> **NOTES:**
> 
> • The Plan does not pay for nor is responsible for the participant's attorney's fees. Attorney's fees are to be paid solely by the participant.

9

(Varco Aff. Ex. A.) Varco reasons that if the Plan intended that she should pay Wal-Mart's share of her attorney's fee, then those terms should have been included in the Associates Benefits Book.[9] Again, this argument is specious. It is merely an attempt to address the applicability of the common fund doctrine, discussed below, and will be treated as such.

## D. The applicability of the common fund doctrine

The Illinois common fund doctrine provides that where an attorney's work generates a fund, the attorney is entitled to be paid from that fund and the beneficiaries of the fund are only entitled to the proceeds net of their proportionate share of the legal expense. *Blackburn*, 115 F.3d at 494. It is a common law "equitable exception" to the general, or "American" rule, that each party to litigation bears its own attorney fees, absent a fee-shifting statute, *Scholtens v. Schneider*, 173 Ill. 2d 375, 384, 671 N.E.2d 657, 662 (1996), and is based on the concept of unjust enrichment. *Id.*, 173 Ill. 2d at 385, 671 N.E.2d at 663 ("[U]nless the costs of litigation are spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts"). *Accord, Boeing Co. v. Van Gemert*, 444 U.S. at 478 ("[T]he common fund doctrine reflects the traditional practice in courts of equity . . . and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees").

The reimbursement provision of the Plan requires 100% reimbursement and proclaims

---

[9]Varco relies on language in the recent decision of the Illinois Supreme Court in *Bishop v. Burgard*, 198 Ill.2d 495, 499, 764 N.E.2d 24, 28 (2002), where the court, in describing the terms of the ERISA plan, pointed out that the "[p]lan provisions do not expressly repudiate the common fund doctrine, nor do they specifically state that the participant will be obligated to pay *the plan's* attorney fees." (emphasis in original).

Varco also points to the section "Cooperation Required," which has a provision that requires the participant to cooperate in the Plan's recovery of the payments made by the Plan. Based on this provision, she makes the policy argument that the Plan may force a participant to hire an attorney and be forced to pay attorney's fees that would benefit only the Plan. Although this situation may occur, these are not the facts before this court.

that the Plan is not responsible for paying the participant's attorney's fee when the participant recovers medical expenses. Despite this provision, Varco contends that under the common fund doctrine the Plan is obligated to pay its share of her attorney's fee. Varco relies on favorable dicta in *Administrative Committee v. Wells*, 213 F.3d 398, 403 (7th Cir. 2000), as well as the recent pronouncement of the Illinois Supreme Court in *Bishop v. Burgard*, 198 Ill. 2d 495, 510, 764 N.E.2d 24, 34 (2002), which holds that despite an ERISA plan's contractual language requiring 100% reimbursement, the common fund doctrine requires the Plan to bear its proportionate share of the participant's attorney's fee.[10]

Wal-Mart dismisses *Bishop* as having already had its holding rejected by federal courts,[11] arguing that it is inconsistent with *Egelhoff v. Egelhoff*, 532 U.S. 141, 152 (2001) (ERISA preempts state law providing that designation of spouse as beneficiary of a non-probate asset is revoked automatically on divorce), *Health Cost Controls of Illinois*, 187 F.3d at 710 (reimbursement provisions of an ERISA plan document entitled the assignee of the beneficiary to

---

[10] *Bishop* held on facts very similar to those presented here that ERISA does not preempt Illinois' common fund doctrine and that the doctrine applies even where the explicit terms of the plan require plaintiff to bear her attorney's fee. The court reasoned, quoting from its earlier decision in *Scholtens*, 173 Ill. 2d at 389-90, 671 N.E.2d at 664-65,

> "In effect, the attorney who performed legal services that ultimately led to the recovery of the plan's subrogation lien instituted a separate and distinct action against the Trustees for unpaid fees. The act, in substance if not in form, is wholly independent of and unrelated to the underlying benefit plan."

*Bishop*, 198 Ill. 2d at 504, 764 N.E.2d at 31.

[11] *See, e.g., Great-West Life and Annuity Ins. Co. v. Moore*, 133 F. Supp. 2d 677, 680 (N.D. Ill. 2001) (concluding the bank holding the funds in dispute should be ordered to turn over the funds to the plan fiduciary in accordance with the plan's terms and not with the common fund doctrine); *Fairfield Mfg. Co. v. Hartman*, 132 F. Supp. 2d 1142, 1146 (N.D. Ill. 2001) (holding common fund doctrine inapplicable where plan provision expressly disclaimed obligation to pay participant's attorney's fees); *McCotter v. Longo*, No. 95 C 5985, 1997 WL 630188, at *2 (N.D. Ill. Sept. 30, 1997) ("Unlike the plan in *Blackburn*, the Plan here expressly provides that its right to reimbursement will not be reduced by the covered person's own negligence or attorney's fees and costs . . . *Blackburn's* holding is inapplicable here. . . .").

11

reimbursement out of third party recovery), and *Harris Trust and Savings Bank v. Provident Life and Accident Ins. Co.*, 57 F.3d 608, 615-16 (7th Cir. 1995) (ERISA plan entitled to reimbursement of expenses paid to employee out of third party recovery). Wal-Mart, further, accurately points out that the Seventh Circuit has never ruled, either as a matter of state or federal common law, that the common fund doctrine defeats the terms of an ERISA plan that expressly require participants to pay their own legal fees. *See Blackburn*, 115 F.3d at 496 (Although the common fund doctrine applied where the Plan did not specifically require participant to bear her own attorney's fee, the court commented, "A plan might have a better argument if its governing documents expressly required participants to pay their own legal fees . . . and to remit the gross rather than the net proceeds from litigation"); *Wells,* 213 F.3d at 403 ("We need not consider whether [Indiana] 'common fund' law is applicable . . . ."). Further supporting Wal-Mart, the Seventh Circuit has stated, in *dicta* but plainly, that "[b]ecause ERISA supersedes any and all state laws relating to covered plans, . . . [the Illinois common fund] doctrine is not available to [the beneficiary] [where] the terms of the plan require reimbursement of the entire amount without the deduction of any attorney's fees." *Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Health and Welfare Fund*, 25 F.3d 509, 510 (7th Cir. 1994).

However, as the Seventh Circuit three years after *Land* stated in *Blackburn*, "The status of the state's common-fund doctrine is a recurring question that should be clarified . . . ." In holding that the federal court lacked jurisdiction over a claim that the common fund doctrine applied to a third party recovery or over the Plan's preemption defense, the court in *Blackburn* specifically ruled: "[T]he Illinois common-fund doctrine is not preempted . . . . *Scholtens v.*

*Schneider*, 173 Ill.2d 375 (1996), holds that § 514(a) does not preempt the common-fund doctrine. We agree with *Scholtens*." 115 F.3d at 495.

If the law is as *Blackburn* says and as *Wells* indicates, the common fund doctrine is not preempted and state courts have jurisdiction to rule on the federal defense (if it exists where a fiduciary is concerned).[12] Until *Bishop* was decided, an ERISA plan that specifically required the participant to bear her attorney's fee could be distinguished from *Scholtens* and *Wells*, as the federal courts have consistently done. It would be anomalous, however, for this court in this rare case in federal court[13] to adhere to the view that the common fund doctrine does not apply where the "run of the mine" case of this sort will be decided in the Illinois courts and governed by *Bishop*. If *Bishop* was wrongly decided, only the United States Supreme Court or the legislature can overrule it.

*Egelhoff* does not require this court to assume that *Blackburn* and *Wells* are incorrect, as it treats ERISA preemption in another context. *Land* is an earlier statement where the issue was not directly litigated, so it does not undermine *Blackburn* and *Wells*. Under these authorities, then, summary judgment as Wal-Mart has sought, is appropriate because Varco has money to which Wal-Mart has a superior claim. But because the Plan must bear its proportional share of

---

[12]*Great West Life* ruled that the fiduciary had no claim under § 502(a)(3). It reserved the possibility that a remedy might otherwise be available, stating, "We express no opinion as to whether petitioners could have intervened in the state-court tort action brought by respondents or whether a direct action by petitioners against respondents asserting state-law claims such as breach of contract would have been pre-empted by ERISA." *Great-West Life*, 534 U.S. at ___, 122 S. Ct. at 718.

[13]After the *Great West Life* decision, however, few cases will be decided in the federal courts. Only because the pending case arises in equity as a result of the unique circumstance in which Dunford distributed the settlement monies without the state court's blessing, is this case in federal court. Had this not occurred, under *Great-West Life* Wal-Mart's claim for reimbursement subject to the terms of the Plan would be a legal claim be in state court.

13

Dunford's fee, Wal-Mart is entitled only to restitution net of its proportionate share of the legal expenses.

**ORDER**

Wherefore, for the reasons set forth above, Wal-Mart's motion for summary judgment is granted [#12] in the form of restitution in the amount of $18,865.72 less Wal-Mart's proportionate share of Dunford's fee and Varco's costs, plus prejudgment interest. Counts III and IV of Wal-Mart's complaint are voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(2). The court dismisses Dunford as a defendant and Dunford's counterclaim against Wal-Mart under Federal Rule of Civil Procedure 21. Wal-Mart's motion to dismiss the counterclaim [#52-1] and Dunford's motion for summary judgment on his counterclaim [#47-1] are moot. The parties are directed to submit a proposed decree, consistent with this opinion, requiring restitution of a precise amount of money. The case is placed on the status call for Tuesday, October 29, 2002 at 9:30 a.m. at which time the parties shall appear should they be unable to agree on an appropriate form of order.

ENTER:

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: October 2, 2002