# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8277 | **DATE** | 7/1/2004 |
| **CASE TITLE** | Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan vs. Clara Varco | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Plaintiff's motion for attorney's fees [115-1] is denied. Judgment is entered in favor of plaintiff and against defendant in the amount of $18,865.72, plus interest. Plaintiff is also awarded its costs.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 0 6 2004 date docketed | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT CLERK | | 19 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | 2004 JUL -2 PM 4:43 | 7/1/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MD | courtroom deputy's initials | FILED-EOD | MD mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 0 6 2004

ADMINISTRATIVE COMMITTEE OF THE )
WAL-MART STORES, INC. ASSOCIATES' )
HEALTH AND WELFARE PLAN, )
)
Plaintiff, )
)
vs. ) Case No. 01 C 8277
) Judge Joan H. Lefkow
CLARA VARCO, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

This case arose when Clara Varco agreed in September, 2001 to settle for $100,000 her vehicle accident personal injury law suit filed in the Circuit Court of Cook County ("the state court"). The settlement award was subject to a lien asserted by the Administrative Committee of the Wal-Mart Stores, Inc., Associates' Health and Welfare Plan ("Committee") in an amount (precisely $34,034.55) equal to the reimbursement to which it was entitled under a self-funded health and welfare plan ("the plan") sponsored by Varco's employer, Wal-Mart Stores, Inc.[1] Plaintiff, by her counsel, Laurence J. Dunford, in contemplation of the settlement moved in the state court for adjudication of various liens, including that of Committee. Without revealing its intention to remove the case, Committee obtained from the state court postponement of the lien adjudication. Committee immediately removed the case to this court, a transparent maneuver to

---

[1] Needless to say, the plan was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. This court's jurisdiction under § 1132(a)(3)(B) was noted in a ruling reported at 2002 WL 31189717 (Oct. 2, 2002); affirmed as to jurisdiction, 338 F.3d 680, 688 (7th Cir. 2003).

1

119

avoid the "common fund doctrine" of Illinois law which could have resulted in Committee's being charged a proportional share of the fee Varco would have to pay her lawyer out of the settlement.[2] On November 15, 2001, the federal court held the case improperly removed and remanded it to the state court. *Varco v. Lapsis*, Case No. 01 C 7695, 172 F. Supp. 2d 985 (N.D. Ill. 2001). Even before that ruling, on October 29, 2001, Committee filed the pending case, characterizing its claim as one for equitable relief, to impose a constructive trust on the settlement fund. Varco moved to dismiss, resting on *Varco v. Lapsis* and lack of subject matter jurisdiction.

Committee learned on December 1, 2001 from Dunford, that in spite of the pending litigation in both forums Dunford had paid himself and disbursed the remainder of the settlement fund to Varco. On December 4, Committee's counsel, John M. Russell, wrote to Dunford, demanding that he preserve $34,034.55 in his client trust account pending resolution of Committee's claim and threatened to join Dunford to the law suit. Dunford refused, and Committee filed an amended complaint joining Dunford as a defendant and moved for injunctive relief. This motion was heard on December 14 and this court ordered Dunford and Varco to refrain from further disposition of the funds until Committee's claim could be resolved. In spite of this court's assertion of jurisdiction over the settlement fund, on or about December 29, 2001, Dunford and Varco returned to the circuit court (which Dunford viewed as more likely to apply

---

[2]At the time, the Supreme Court of Illinois had under advisement in the appeal of *Bishop v. Burgard*, 317 Ill. App. 3d 923, 741 N.E.2d 306 (3rd Dist. 2000), the issue whether the common fund doctrine applied to ERISA plans which provided that the beneficiary was solely responsible for attorney's fees in pursuing recovery against a liable third party. The appellate court had held that the common fund doctrine did not apply to reduce a plan's reimbursement in this situation. The Supreme Court ultimately reversed. *Bishop v. Burgard*, 198 Ill.2d 495, 510, 764 N.E.2d 24, 34 (2002) (holding that ERISA does not preempt Illinois' common fund doctrine, even where the explicit terms of the plan require plan participant to pay her own attorney's fee).

2

the common fund doctrine) with a motion to adjudicate the lien. In response, Committee on January 2, 2002, filed an emergency motion in this court to enjoin the state court from adjudicating the lien. On January 11, 2002, this court stayed the state court proceedings and enjoined Dunford and Varco from proceeding further in state court. Dunford and Varco appealed the injunction and stay and, at the same time, sought to have this court vacate its orders and dismiss. These motions were denied. Ultimately, this court ruled on the merits that the common fund doctrine applied and entered an order of restitution in favor of Committee in an amount ($12,378.04) reflecting the application of the common fund doctrine. *Administrative Committee* v. *Varco*, 2002 WL 31189717 (Oct. 2, 2002); Docket #89. Committee appealed and the court of appeals reversed, holding that the common fund doctrine did not apply where the plan specifically provided that Varco was responsible for any attorney's fees she incurred in collecting the underlying recovery.

In the end, Committee is entitled to $18,865.72 (plus prejudgment interest and costs), unless this court grants its pending motion to award fees to Committee under ERISA's discretionary fee-shifting provision, 29 U.S.C. § 1132(g)(1). Committee argues that it should be awarded its fees not only because it prevailed on the central issue that (a) the court had jurisdiction and (b) the common fund did not apply but also because Varco acted in bad faith during the litigation in two specific respects: first, Committee asserts that it sought to avoid the costly litigation of the motions for injunctive relief by requesting that Dunford simply set aside $34,034.55 until the issues could be resolved, but Dunford for Varco refused to make that commitment to Committee's counsel. Rather, before either the state or federal court had adjudicated the lien, Dunford paid himself and disbursed the remainder to Varco. This caused

3

Committee to have to move for the injunction and stay, appear in court for two lengthy hearings with associated pleadings and briefs, only to learn by letter from Dunford dated December 29, 2001 that Varco as of November 14, 2001 had, in fact, put $34,034.55 in a separate account pending resolution of Committee's claims. Second, Committee imputes bad faith to Varco by her insistence on proceeding in state court even after this court assumed jurisdiction over the settlement fund, which put Committee in the position of resorting to the extraordinary remedy of a federal stay of a state court proceeding. Committee also argues that Varco can afford to pay fees out of the $100,000 settlement fund (actually, that's $100,000 - $22,000 [Dunford's share] - $18,865.72 = $59,134.28 - an unknown amount for court costs), and that an award of fees is important to the policy of deterring other personal injury plaintiffs from violating their plan agreements and provoking needless litigation.

Varco responds to the motion by asserting that Committee was more at fault than Varco because it refused to accept several reasonable offers (Varco by her counsel offered on December 1, 2001 to settle the claim for $17,017.28, just under the actual recovery amount[3]). Further, Varco asserts she always intended to pay the amount she owed; that is why she asked the state court to adjudicate the lien. (In other words, if Committee had accepted the risk of being subjected to the common fund doctrine, the battle in federal court would have been unnecessary.) Varco also contends that she was not in bad faith (as she believes Committee implies) just

---

[3]Varco also refers to an offer of 2/3 of the $34,035.55 (approximately $22,690.00) made on an unspecified date and an offer in open court on January 10, 2002, of $28,000. These offers were made on the assumption that $34,034.55 was the reimbursement amount. At some time, now unknown to the court (perhaps March 2002), Committee revealed that the discounted reimbursement amount was only $18,865.72. Thereafter, Varco reduced her offer to $12,577.15, or 2/3 of the adjusted reimbursement amount.

Incidentally, Varco accuses Committee of lying about its claim for $34,000. The court has no information, however, as to when Committee became aware that the claim was reduced or how promptly it made that known to Dunford, so the court is unable to infer misconduct on Committee's part.

4

because she resisted Committee's strong-arm demands, and she points out that she did, in fact, set aside the money in a reserve account.

Varco also argues the perhaps irrefutable proposition that her position on the merits of the common fund doctrine, although not ultimately successful, was certainly reasonable in light of *Bishop* v. *Burgard*, 198 Ill.2d 495, 510, 764 N.E.2d 24, 34 (2002), which was decided on January 25, 2002 adversely to an ERISA plan on the same issue. She does not but might also point out that the issue had been acknowledged but sidestepped over a period of years by the Seventh Circuit–in fact, it was resolved on the appeal of this case. *See Administrative Committee* v. *Varco*, 338 F.3d 680, 689 (7th Cir. 2003)("*Varco* appeal")("'[T]he status of the state's common fund doctrine is a recurring question that should be clarified. . . ,'"quoting *Blackburn* v. *Sundstrand Corp.*, 115 F.3d 493, 495 (7th Cir. 1997)), *cert. denied*, --- S.Ct. ----, 2004 WL 1432399 (Jun. 28, 2004). Varco believes this justified her return to state court to seek adjudication of the lien after the federal court assumed jurisdiction over the parties and the settlement funds.

Varco in her response does not address her failure to be forthcoming about the whereabouts of the settlement money. In a hearing before this court on January 10, 2002, however, Dunford explained that he "did not have authority to disclose the existence of that account from [Varco]. When I first received that authority, I disclosed it to this Court . . . ." (Transcript of Proceedings, Exh. 2 to Varco's Response, at 10.) Later, the court asked, "Why did you tell me the first time this was up . . . [on December 14[th]] that you had distributed the funds when apparently they were actually being held in a separate account? Is that right?" Dunford responded, "I had distributed the funds. They are in an account in the name of Clara Varco. I did

5

not have authority to inform you that the reasons she put them in the account was as a reserve account . . . until the resolution of this case, until after our hearing on December 21st." The court responded, "I don't know what you mean by not having authority." Dunford replied, "I learned that from a conference with my client. I did not have her permission to make that a matter of public record, Judge. And I was concerned about my obligation under attorney-client privilege, and I wanted a specific waiver before I could inform the Court. When I got that waiver, I informed the court and counsel." (Tr. at 20-21.)

## DISCUSSION

Committee's front line position is that it should be awarded its fees, which are undoubtedly substantial, for the entire case. Failing that, it seeks compensation for the fees incurred in obtaining emergency relief in the form of the temporary restraining order, preliminary injunction, and stay.

Section 1132(g)(1) is not a fee-shifting statute of the sort that would justify fees to Committee merely because it is the prevailing party. *See Bittner* v. *Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir.1984)(The legislature "[a]lmost certainly" did not intend "to [adopt] the English rule that the winning party to a lawsuit is automatically awarded a reasonable attorney's fee."). Rather, the Seventh Circuit has adopted the test of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), as the appropriate guide for determining fees under § 1132(g)(1). *Bittner*, 728 F.2d at 830. To paraphrase EAJA, this rule entitles the prevailing party to fees unless the court finds that the position of the opponent was substantially justified or

that special circumstances make an award unjust. *Id.*[4]; *Central States, Southeast, and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 272 F.3d 1000, 1004 (7th Cir. 2001). Neither of the cases on which Committee relies, *Janowski v. Int'l Brotherhood of Teamsters Local No. 710 Pension Fund*, 673 F.2d 931 (7th Cir. 1982) (a class action brought on behalf of plan beneficiaries) and *Hunt* (a dispute between a plan and an employer concerning withdrawal liability), presents a factual situation of a plan seeking fees against an individual beneficiary. Such a situation was presented in *Meredith v. Navistar Intern. Transp. Corp.*, 935 F.2d 124, 128 (7th Cir.1991), where the plan did not seek fees in the district court but lost patience when a beneficiary pursued an arguably frivolous appeal. Although acknowledging the claims on appeal were "long shots" the court in *Meredith* declined to impose fees because the appeal was not meant to harass, neither were the claims "entirely groundless" or claims that "the plaintiff knew or should have known [were frivolous] long before trial." *Meredith*, 935 F.2d at 129 (internal quotation marks omitted). Similarly in *Bittner*, the court of appeals overruled the district court's finding that a beneficiary's ERISA retaliation claim was frivolous, although it remanded for consideration of whether the plaintiff's position was substantially justified and whether exceptional circumstances justified withholding an award of attorney's fees even if the basis of

---

[4]Committee cites the standard set out *Janowski v. Int'l Brotherhd. of Teamsters Local 710 Pension Fund*, 673 F.2d 931, 940 (7th Cir. 1982), as well as many other cases, *e.g., Meredith v. Navistar Intern. Transp. Corp.*, 935 F.2d 124, 128 (7th Cir.1991), which list five (non-exclusive) factors may consider in determining whether an award of attorney's fees is appropriate under ERISA: "(1) the degree of the offending party's bad faith or culpability; (2) the ability of the offending party to satisfy an award of fees; (3) whether or not an award of fees against the offending parties would deter other persons acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan; and (5) the relative merits of the parties' positions." *Janowski*, 673 F.2d at 940; *Meredith*, 935 F.2d at 128. As reflected in *Bittner* and *Meredith*, the court now looks to the EAJA test, which is "consistent with previous articulations of the test under section 1132(g)(1) but is simpler and more definite." *See Meredith*, 935 F.2d at 128 ("[In *Bittner*] we suggested a more general and less cumbersome approach for requests for attorney's fees under ERISA."); *Bittner*, 728 F.2d at 830 (The five-factor test "is oriented toward the case where the plaintiff rather than the defendant prevails and seeks an award of attorney's fees."). Thus, the court will go directly to the EAJA test.

the suit was not substantially justified. *Bittner*, 728 F.2d at 831.[5] Factors and tests aside, then, it is safe to say that in the absence of bad faith the Seventh Circuit's guidance is conservative on imposing fees against an individual beneficiary, even where the merits are borderline frivolous. Indeed, Committee has not cited an exemplary case. It cites only *Janowski* where fees were awarded and upheld on appeal, but the award was *in favor of* plan beneficiaries, and *Hunt*, in which the court actually reversed fees imposed in favor of the a plan and against a contributing employer.

Now to apply the EAJA test. Varco's position on the merits of her law suit (the common fund question) was certainly substantially justified. This alone prevents an award for all Committee's fees in the case. This leaves only the question whether Dunford's position in distributing the settlement fund before the lien was adjudicated and thereafter avoiding the federal court's jurisdiction by returning to the state court for *post hoc* lien adjudication, and Varco's failure to disclose the existence of the separate bank account, were not substantially justified; and if so, whether special circumstances make an award unjust. With respect to the jockeying between federal and state courts, while this court is confident that Dunford should have presented the issue to federal court, on December 29, 2001 when he presented Varco's motion to adjudicate the lien, the state court did have jurisdiction over the injury case, and a reasonable attorney might have considered it proper to seek the relief there. Thus, Varco's position on this matter was also substantially justified.

On the other hand, Varco has not demonstrated either authority or persuasive argument justifying Dunford's conduct in distributing the funds without providing security for

---

[5]The outcome after the remand is not available on Westlaw.

8

Committee's interest, and the court is compelled to conclude that this conduct was not substantially justified. This finding is mitigated, however, by the fact that soon thereafter Varco set aside the funds, so in fact there was no actual prejudice to Committee's interest. Finally, although respectful of counsel's assessment of his obligation to protect his client's attorney-client privilege, the court remains puzzled as to why Dunford believed that revealing the existence of the account might breach the privilege. Had Committee served an interrogatory requesting the information, Varco could not have withheld it as privileged because the privilege protects only communications between attorney and client, which this certainly was not. (In other words, the privilege would apply to Varco's and Dunford's conversation about whether to reveal the existence of the account but not the fact of its existence). Varco has not demonstrated any case law supporting her position, nor could she. Thus, the most reasonable inference is that the refusal to disclose the account was strategic rather than substantially justified in law. Having concluded that Dunford was wrong in his judgment in these two respects, however, the court is confident that Dunford on Varco's behalf was not acting in bad faith but rather attempting to preserve his client's interest against a powerful assault.

As for whether special circumstances make an award unjust, the court concludes that there are circumstances here that would make imposition of fees against Varco unjust. First, Varco undoubtedly had little, if anything, to do with the whole situation. This was a high stakes battle between counsel over an issue of great importance to Committee because of the broad implications of the common fund issue for plan administration. While Committee argues that Dunford was unreasonable in avoiding federal jurisdiction, Committee needs to acknowledge its own equally stubborn maneuvering to avoid state court jurisdiction. Committee could have

9

argued against application of the common fund doctrine before the state court judge but instead removed the case and filed an equitable action which would have been unsuccessful on jurisdictional grounds in light of *Great-West Life & Annuity Ins. Co. v. Knudsen*, 534 U.S. 204 (2002) (decided three days before this court stayed the state court proceeding), had the fund not still been specifically identifiable because Varco had not spent the money.[6] *See* Order of January 11, 2002 ¶ 3 (Docket #25). To the extent Dunford caused unnecessary litigation by his lack of candor about the account, this falls on the side of lawyering as opposed to client misconduct. Although Dunford is, as Committee points out, Varco's agent and thus acting for Varco, it would be harsh to impose responsibility for a lawyer's misinterpretation of the attorney-client privilege on the client, who knows nothing of the doctrine.

Finally, the court believes that the relatively small remainder of the settlement award that will ultimately go to Varco to compensate her for her injury presents a special circumstance that would make fee-shifting in favor of Committee unjust. Although there is no evidence from either side demonstrating Varco's personal financial situation (and the burden of proof is likely on Committee here), the court has never received any indication that Varco is a person of means that would make her able to afford one or more tens of thousands of dollars in additional attorney's fees. *See Bittner*, 728 F.2d 830 ("Another possible factor is the plaintiff's ability to

---

[6]*Great-West Life* held that ERISA did not authorize a suit by a plan to impose personal liability against a beneficiary for reimbursement, where the settlement fund had already been distributed to a special needs trust for the beneficiary's care and to the beneficiary's attorney and lien holders in the state court action, because the relief sought was legal, rather than equitable. This court ruled that the claim here was equitable, distinguishing *Great-West Life* on the basis that here the settlement fund was identifiable and thus the court could impose a constructive trust over it separate and apart from Defendant's personal liability. 2002 WL 31189717, at * 3; *see Varco* appeal, 338 F. 3d at 688 ("Thus, under *Great-West Life*, the reimbursement action by the Committee in this unique case is equitable because the funds the Committee seeks to recover are identifiable, are in the control of a defendant, and the Committee is rightfully entitled to the monies under the terms of the Plan.")

10

pay an award; if he cannot pay one without great hardship . . . it may be unjust to award fee to the defendant."). This case was a landmark victory for Committee. In light of the settlement offers made, the court must infer that Committee litigated the case to vindicate its position on the law rather than to recover $6,484.68 additional reimbursement. It was a worthwhile endeavor, but the cost of that endeavor should be borne by the beneficiary, who in this case is Committee.

## CONCLUSION AND ORDER

For all of these reasons, the court finds that Varco's position on the merits of the case was substantially justified, and that even though Varco's positions on two issues were not substantially justified, special circumstances make an award of fees against Varco unjust. Therefore, Committee's motion for attorney's fees is denied. The Clerk is directed to enter judgment in this case in favor of Administrative Committee of the Wal-Mart Stores, Inc., Associates' Health and Welfare Plan and against Clara Varco in the amount of $18,865.72, plus prejudgment interest. Administrative Committee is also awarded its costs.

ENTER:

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: July 1, 2004